UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

EMANUEL SHAQUILLE HARRIED,

    Plaintiff,

v.

STATE OF MARYLAND,
PRINCE GEORGE'S COUNTY,
MARYLAND,
PRINCE GEORGE'S COUNTY DEPUTY
SHERIFF CHRIS CORMIER,
*Individually and in his Official Capacity as a
Prince George's County Deputy Sheriff*, and
PRINCE GEORGE'S COUNTY POLICE
OFFICER CORPORAL GORDON HARRIS,

    Defendants.

Civil Action No. TDC-24-1190

**MEMORANDUM OPINION**

Plaintiff Emanuel Shaquille Harried has filed a civil action against Defendants the State of Maryland ("the State"), Prince George's County, Maryland ("the County"), Prince George's County Deputy Sheriff Chris Cormier, and Prince George's County Police Officer Corporal Gordon Harris in which he asserts federal constitutional claims pursuant to 42 U.S.C. § 1983 ("§ 1983"), state constitutional claims, and state common law tort claims arising from a March 2021 incident in which he was arrested by Corporal Harris and Deputy Cormier. Defendants the State of Maryland and Deputy Cormier (collectively, "the State Defendants") have filed a "Partial Motion to Dismiss," which is fully briefed. ECF No. 30. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In his Amended Complaint, Harried alleges that on or about March 2, 2021, he visited a Ross Store ("Ross") in District Heights, Maryland, walked out with clothing valued at approximately $350, and entered a parking lot for a nearby store. A Ross employee contemporaneously reported a theft to the police and identified Harried as the thief.

Harried alleges that, based on the Ross employee's report, Corporal Harris drove into the parking lot where Harried was located, exited his police vehicle, and aggressively approached Harried while shouting commands at him. Because Corporal Harris set upon Harried so quickly, Harried could not initially understand the officer's instructions. Harried eventually heard Corporal Harris's command to "get on the ground," asked Corporal Harris, "[F]or what?", and then dropped the clothing he had taken from Ross. Am. Compl. ¶ 14, ECF No. 29. Without providing further explanation, Corporal Harris charged toward him, grabbed him by the shirt, and pulled him down onto the hood of his police vehicle. Corporal Harris then pulled Harried down onto the pavement, where Harried lay on his back with his hands where the officer could see them. Corporal Harris then stated that Harried was "going to jail" for "shoplifting." *Id.* ¶ 17.

Harried further alleges that, although he remained on the ground in accordance with Corporal Harris's instructions, Corporal Harris drew his taser, stood over him, and tased him repeatedly. As Corporal Harris was tasing Harried, Deputy Cormier drove into the parking lot, exited his vehicle, and joined Corporal Harris. Initially, Deputy Cormier "stood idly by" and watched as Corporal Harris tased Harried several more times while he was laying on the ground. *Id.* ¶ 20. Harried alleges that Deputy Cormier then proceeded to assist Corporal Harris by grabbing hold of and wrestling Harried's arms in opposite directions before both officers began tasing Harried several more times. The officers then placed handcuffs on Harried.

Corporal Harris and Deputy Cormier then yanked, pushed, and pulled Harried down onto the ground, which caused his head to strike the pavement multiple times. Corporal Harris also jerked and contorted Harried's arms and body in a manner that caused pain due to the handcuffs. Because of the tasing, Harried was so weakened that he was unable to sit up without leaning against Corporal Harris, so Corporal Harris also caused Harried's head to slam into the ground several more times when he moved away from Harried and thus removed the support that was keeping Harried from falling to the ground. Corporal Harris and Deputy Cormier also slammed Harried's head and neck into the ground when moving his unconscious body.

When emergency medical technicians ("EMTs") arrived at the scene, Harried was unconscious and on the ground. Corporal Harris was searching Harried's pockets and pulling his pants down until they were at his knees. Then, prior to stepping away from Harried to allow the EMTs to take custody of him, Corporal Harris kicked at Harried's body while Harried was completely unresponsive.

Harried was initially taken to Southern Maryland Hospital, but due to the severity of his injuries, he was later airlifted to Georgetown University Hospital, where he remained in a coma for over two weeks. Harried alleges that when he finally awoke, he effectively lacked motor skills and was unable to perform even the most basic acts. He therefore needed constant care and, over the next month, engaged in "painstaking and grueling physical therapy" to "re-learn to perform everyday acts and functions, such as eating, walking, and going to the bathroom." *Id.* ¶ 33.

As a result of this incident, Harried was charged in the District Court of Maryland for Prince George's County with second-degree assault, resisting arrest, and theft of property valued between $100 and $1,500. On September 29, 2021, however, all of these charges were disposed of by *nolle prosequi*.

On February 28, 2024, Harried filed the original Complaint in this case in the Circuit Court for Prince George's County. On April 23, 2024, the County removed the case to this Court. On July 19, 2024, Harried filed the presently operative Amended Complaint in which he asserted seven causes of action against Defendants, numbered as follows: (1) a § 1983 claim against Corporal Harris, Deputy Cormier, and the County for excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution; (2) a § 1983 claim against Deputy Cormier in his individual capacity for excessive force in violation of the Fourth and Fourteenth Amendments; (3) a claim against all Defendants for excessive force in violation of Article 24 of the Maryland Declaration of Rights ("Article 24"); (4) a claim against all Defendants for excessive force in violation of Article 26 of the Maryland Declaration of Rights ("Article 26"); (5) a claim against Corporal Harris and Deputy Cormier for the common law tort of battery; (6) a claim against all Defendants for the common law tort of intentional infliction of emotional distress ("IIED"); and (7) a claim against all Defendants for the common law tort of gross negligence.

## DISCUSSION

In the Motion, the State Defendants assert the following arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of the following counts or claims: (1) the § 1983 claim against Deputy Cormier in Count 1 should be dismissed because it is duplicative of the claim asserted in Count 2; (2) the claim against Deputy Cormier in his official capacity in Count 1 should be dismissed because in that capacity he is not a "person" subject to liability under § 1983 and is entitled to immunity under the Eleventh Amendment to the United States Constitution; (3) Count 3 should be dismissed because Harried has failed to state a viable claim for a violation of Article 24; (4) Count 6 should be dismissed because Harried has failed to state a viable claim for IIED; and (5) Count 7 should be dismissed as to the State because it has sovereign immunity against the

gross negligence claim. Because Harried has now voluntarily withdrawn the gross negligence claim against the State, *see* Opp'n at 12, ECF No. 41, the Court need not address the argument relating to Count 7 and will dismiss that claim as to the State.

## I.   Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.  Duplicative Claims

In the Motion, the State Defendants argue that Harried's § 1983 claim in Count 1 against Deputy Cormier is duplicative of Harried's § 1983 claim in Count 2 and should therefore be dismissed.

Claims are duplicative if they "stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp. 3d 392, 417 (D. Md. 2022) (quoting *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 81 (D.D.C. 2010)). A "district court 'has discretion to dismiss duplicative claims where they allege the same facts and the same injury'" in the interest of judicial economy. *Id.* (quoting *C&K NuCo, LLC v. Expedited Freightways, LLC*, No. 13 C 4006, 2014 WL 4913446, at *12 (N.D. Ill. Sept. 30, 2014)).

Count 1 does not specify whether the § 1983 claim is asserted against Deputy Cormier in his official capacity, in his individual capacity, or both, but the caption and other language in the Amended Complaint specifically state that Deputy Cormier is sued "in his official and individual capacities." Am. Compl. ¶ 7. Based on such language, the State Defendants fairly construed Count 1 as including a claim against Deputy Cormier in his individual capacity. While such a claim would be duplicative of the claim asserted Count 2, Harried has clarified in his memorandum in opposition to the Motion that Count 1 should be read to assert a claim against Deputy Cormier in his official capacity only. Based on that clarification, the Court finds that the claims against Deputy Cormier in Counts 1 and 2 are different, so the Motion will be denied as to the issue of duplicative claims.

Going forward, Count 1 will be construed as asserting, as to Deputy Cormier, a claim against him in his official capacity only. Count 2 asserts only a claim against Deputy Sheriff Cormier in his individual capacity. Contrary to Harried's assertion in his memorandum in opposition to the Motion, Count 2, as drafted, contains no claim against the State or against Deputy Cormier in his official capacity as a state employee. See Id. ¶¶ 48–59; *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"). In any event, as discussed below, any claim against the State or Deputy Cormier in his official capacity as a state employee would necessarily fail.

### III. Official Capacity Claim

In the Motion, the State Defendants also argue that, to the extent that Harried's § 1983 claim in Count 1 is brought against Deputy Cormier in his official capacity, it should be dismissed

6

because Deputy Cormier is a state official, and such an official is not a "person" who is amenable to suit under § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983. Relatedly, they also argue that the Eleventh Amendment, which generally bars suits in federal court against a State, applies to this claim. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–99 (1984).

The United States Supreme Court has held that a suit against a state official "in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, such a suit is "no different from a suit against the State itself." *Id.* Recognizing that Eleventh Amendment immunity applies to such suits, and concluding that Congress did not intend to override that immunity through § 1983, the Court held in *Will* that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under § 1983 and are thus not subject to suit under § 1983. *Id.* at 70–71. Thus, if Deputy Sheriff Cormier is properly deemed to be a state official for purposes of the relevant events, the suit against him in his official capacity would be barred both because he would not be a "person" subject to suit under § 1983 and because it would be a suit against a State barred by the Eleventh Amendment. *See id.*

Defendants assert that Deputy Cormier was a state official at the time of the relevant events based in part on case law that references a state statute defining "State personnel" as including "a sheriff or deputy sheriff of a county." Md. Code Ann., State Gov't § 12–101(a)(6) (LexisNexis 2021); *see, e.g., J.A. v. Abreu*, No. 23-cv-02922-JRR, 2024 WL 3638023, at *3 (D. Md. Aug. 2,

7

2024). Harried, however, argues that the claim against Deputy Cormier in his official capacity may proceed because there is a plausible argument that he was acting as a county employee, not a state employee, during the relevant events, and the Eleventh Amendment does not apply to local government entities and employees. *See Harter v. Vernon*, 101 F.3d 334, 337 (4th Cir. 1996) (en banc).

Despite Defendants' reference to a state statute identifying deputy sheriffs as state personnel, the question of whether a defendant is a state official or a county official for purposes of Eleventh Amendment immunity and a § 1983 claim is a matter of federal law, not state law. *See Ram Ditta By & Through Ram Ditta v. Md. Nat'l Cap. Park & Plan. Comm'n*, 822 F.2d 456, 459–60 (4th Cir. 1987). In determining whether an employee of a government agency is a state official for purposes of Eleventh Amendment immunity, the United States Court of Appeals for the Fourth Circuit applies a "four-part, nonexclusive test" consisting of the following factors: (1) "whether the state treasury will be responsible for paying any judgment that might be awarded"; (2) "whether the entity exercises a significant degree of autonomy from the state"; (3) "whether it is involved with local versus statewide concerns"; and (4) "how it is treated as a matter of state law." *Harter*, 101 F.3d at 337 (quoting *Ram Ditta*, 822 F.3d at 457–58). The first of these factors is the "most important consideration." *Id.* In *Harter*, the court concluded, based on the application of these factors, that sheriffs in North Carolina are not state officials for purposes of Eleventh Amendment immunity. *Id.* at 340–43.

Notably, in *Santos v. Frederick County Board of Commissioners*, 346 F. Supp. 3d 785 (D. Md. 2018), the court, after applying these factors, concluded that the sheriff and deputy sheriffs of Frederick County, Maryland were not state officials subject to Eleventh Amendment immunity for purposes of alleged violations of rights committed while engaging in immigration enforcement

activities pursuant to an agreement with federal authorities. *Id.* at 798–800. The court reached this conclusion because the first three factors weighed against Eleventh Amendment immunity, and despite the fact that, as to the fourth factor, "Maryland state law typically treats sheriffs and deputies as state employees." *Id.* at 798–99. Defendants' reliance on other decisions from within this District generally stating that Maryland sheriffs are state officials is misplaced because none of those cases applied the analysis required by *Harter*. *See, e.g., Rossignol v. Voorhaar*, 321 F. Supp. 2d 642, 650–51 (D. Md. 2004); *J.A.*, 2024 WL 3638023, at *3–5; *see also Lane v. Anderson*, 660 F. App'x 185, 195–96 (4th Cir. 2016) (reversing a determination that a sheriff in Maryland was a state official for purposes of the Eleventh Amendment where the district court relied only on state law and failed to analyze the factors set forth in *Harter* and *Ram Ditta*).

At this preliminary stage, and prior to any factual development, there is, at a minimum, a plausible argument that Deputy Cormier was a county official, rather than a state official, for purposes of Eleventh Amendment immunity. As to the first factor, "whether the state treasury will be responsible for paying any judgment that might be awarded," *Harter*, 101 F.3d at 337, Maryland law provides that for a claim alleging "tortious conduct by a sheriff or deputy sheriff arising out of activities relating to the performance of a law enforcement function," the claim is to be "considered, defended, settled, and paid in the same manner as any other claim filed against a county," and the "liabilities of the State" for such a claim "shall be assumed by the applicable county." *See* Md. Code Ann., State Gov't §§ 12–103.3(b)(1), (d)(1)–(2) (LexisNexis 2021 & Supp. 2024). Thus, the county, not the State, is responsible for any judgment arising from such a case. *See id.*; *Dotson v. Chester*, 937 F.2d 920, 927 (4th Cir. 1991) ("[T]he Maryland legislature appears to have ensured that, regardless of the characterization of the Sheriff, the counties would pay for sheriffs' torts."); *Santos*, 346 F. Supp. 3d at 798.

As to the second factor, "whether the entity exercises a significant degree of autonomy from the state," *Harter*, 101 F.3d at 337, courts consider circumstances such as "who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions," *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, 650–51 (4th Cir. 2015). Under the Maryland Constitution, the position of sheriff is elected by the residents of each county, though a vacancy in the position is filled by appointment by the Governor. Md. Const. art IV, § 44. The expenses of a sheriff's office are largely funded by the county, including the salaries of deputy sheriffs. *See* Md. Code Ann., Cts. & Jud. Proc. § 2–330 (LexisNexis 2020); *see also Rucker v. Harford Cnty.*, 558 A.2d 399, 402 (Md. 1989) ("Since 1945, the salaries and many of the expenses of the sheriffs' offices have been paid directly by the counties."). Although many of a sheriff's law enforcement duties are established by state statute, that statute allows counties, including Prince George's County, to authorize additional, specific duties. Md. Code Ann., Cts. & Jud. Proc. § 2–330(h)(1)(vii), (2); *see also Dotson v. Chester*, 937 F.2d 920, 927 (4th Cir. 1991) ("[T]he precise dimensions of sheriffs' duties in Maryland frequently have been established by county codes or other local laws."). Notably, as to deputy sheriffs in Prince George's County specifically, state law provides that they are "subject to the county personnel law" and "subject to the Labor Code of the county with regard to collective bargaining for compensation, including pension and other fringe benefits, hours, and terms and conditions of employment." Md. Code Ann., Cts. & Jud. Proc. § 2–330(g)(1), (3)(i). Thus, there are indicia of local autonomy that weigh against a finding that Deputy Cormier was a state official for purposes of the Eleventh Amendment.

On the third factor, whether the entity "is involved with local versus statewide concerns," as noted in *Harter*, "[s]heriffs have been considered county officers from the creation of that office

in England," and while "sheriffs are involved in state concerns, notably enforcing state laws, and performing multiple duties for the benefit of the state," "generally a sheriff may only enforce these laws, or perform these duties, within a given county." *Harter*, 101 F.3d at 341–42.

As for the fourth factor, how the entity is treated as a matter of state law, Defendants have referenced at least one state law that identifies sheriffs as state officials for purposes of the Maryland Tort Claims Act. *See* Md. Code Ann., State Gov't § 12–101(a)(6). Moreover, in *Rucker v. Harford County*, 558 A.2d 399 (Md. 1989), the Court of Appeals of Maryland, now known as the Supreme Court of Maryland ("Maryland Supreme Court"), found that, as a matter of Maryland law, sheriffs and deputy sheriffs engaged in law enforcement activities were state employees. *Id.* at 401–02, 406. The court, however, expressly declined to resolve the question of "whether the Sheriff and Deputy Sheriffs are to be regarded as State or local government employees, for purposes of the Eleventh Amendment or 42 U.S.C. § 1983." *Id.* at 401. Significantly, it reached its determination while also concluding that the state, not the county, bore responsibility for judgments arising from tort claims against such personnel, a conclusion that has since been superseded by state statute. *See id.* at 412; *Santos*, 346 F. Supp. 3d at 798–99 n.8 ("It is worth noting that the Maryland Tort Claims Act, which requires county payment of judgments such as that which may be issued in this case, was passed after the decision in *Rucker*, which held [that] judgments against Sheriffs, as state employees, would be paid by the State."). Nevertheless, this fourth factor appears to weigh in favor of finding that Deputy Cormier was a state official. *See Harter*, 101 F.3d at 342–43.

Where only one of the four factors appears to favor a finding that Deputy Cormier was a state official for purposes of Eleventh Amendment immunity, and where the "most important" first factor of the source of funding for payment of judgments weighs against such a finding, the Court

11

cannot find, at this early stage, that Deputy Cormier was a state official such that the claim against him in his official capacity is barred. *See id.* at 338; *Santos*, 346 F. Supp. 3d at 798–800. Indeed, a final determination on this issue requires additional factual development. *See Santos*, 346 F. Supp. 3d at 800 (finding that the sheriff was a county official for purposes of Eleventh Amendment immunity on a motion for summary judgment); *cf. Durham v. Somerset Cnty.*, No. WMN-12-2757, 2013 WL 1755372, at *3 & n.3 (D. Md. Apr. 23, 2013) (declining to address the question of whether a sheriff in Maryland is "a state or county policymaker" "without a more fully developed factual record"). Because Harried has plausibly alleged that Deputy Cormier was a county official, not a state official, for purposes of his actions during the incident in question, the Court will not dismiss the claim asserted in Count 1 against Deputy Cormier in his official capacity on the grounds that he is a state official who is not a "person" under § 1983 and who is subject to Eleventh Amendment immunity.

## IV. Article 24

In the Motion, the State Defendants seek dismissal of Count 3 on the grounds that "Harried cannot bring a due process claim under Article 24 against Deputy Cormier or the State for alleged excessive force during his arrest" because such a claim arises under Article 26 of the Maryland Declaration of Rights, not Article 24. Mot. Dismiss at 8, ECF No. 30-1.

Article 26 provides:

That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Article 24 of the Maryland Declaration of Rights provides:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of

his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

Md. Const. Decl. of Rts. arts. 24, 26.

The Maryland Supreme Court has recognized that Article 26 is construed *in pari materia* with the Fourth Amendment while Article 24 is construed *in pari materia* with Due Process Clause of the Fourteenth Amendment. *See Gadson v. State*, 668 A.2d 22, 26 n.3 (Md. 1995) (concluding that Article 26 "is *in pari materia* with the Fourth Amendment"); *Koshko v. Haining*, 921 A.2d 171, 194 n.22 (Md. 2007) (stating that Article 24 is "the Maryland due process analog" and that "[o]ur precedent states clearly that the Maryland and Federal due process provisions have been read '*in pari materia*'" (internal citation omitted)). Generally, excessive force during an arrest is a violation of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). Excessive force post-arrest, such as excessive force against a pretrial detainee, is a violation of the Fourteenth Amendment's Due Process Clause. *See Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008). Thus, Defendants are correct that within the framework of the Maryland Constitution, excessive force during an arrest is most properly viewed as a violation of Article 26.

Maryland courts, however, have permitted claims of excessive force under Article 24 to proceed where the conduct occurring during or shortly after an arrest or attempted arrest. *See, e.g., Okwa v. Harper*, 757 A.2d 118, 141 (Md. 2000); *Espina v. Prince George's Cnty.*, 82 A.3d 1240, 1265 (Md. Ct. Spec. App. 2013). In *Okwa*, the Maryland Supreme Court reversed a grant of summary judgment on an Article 24 excessive force claim in which the plaintiff asserted that law enforcement officers improperly handcuffed him in an airport terminal, forcibly removed him from the terminal, forced him to the ground, and caused physical injuries. *Id.* at 123–24, 141. In *Espina*, where the plaintiffs alleged that a police officer engaged in excessive force by shooting their family member during a physical confrontation in which the victim was partially handcuffed, the Court

of Special Appeals of Maryland, now known as the Appellate Court of Maryland, rejected the argument that the claim could proceed only under Article 26 and not under Article 24. *Espina*, 82 A.3d at 1245–46, 1265–66 ("The County asserts that, as a matter of law, the Espinas' Article 24 claim should not have been submitted to the jury because such a claim can only be asserted via an Article 26 claim. We disagree."). These rulings are consistent with the principle that Article 24 is the Maryland equivalent of the Fourteenth Amendment Due Process Clause because at least some portion of the excessive force could be deemed to have occurred post-arrest. By contrast, several of the decisions from other judges in this District cited by the State Defendants arose only in the pre-arrest context. *See, e.g., Graham v. Maryland*, No. 23-1777-BAH, 2024 WL 3276174, at *1, *7–8 (D. Md. July 1, 2024) (dismissing the plaintiffs' Article 24 claim where the defendant officers allegedly shot and killed their dog while arriving at a location to serve a warrant); *Tserkis v. Balt. Cnty.*, No. ELH-19-202, 2021 WL 3129325, at *6–7, *11 (D. Md. July 23, 2021) (dismissing the plaintiffs' Article 24 claim arising out of a fatal police shooting that occurred prior to an arrest). Where, as in *Okwa*, Harried alleges excessive force both before and after he was handcuffed, the Court finds that the Article 24 claim may proceed.

Defendants further argue that the Article 24 claim should be dismissed because to the extent that such a claim must be based on post-arrest conduct, Harried has not alleged sufficient facts to show that Deputy Cormier engaged in excessive force after Harried was arrested. "The point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky." *Orem*, 523 F.3d at 446. Here, however, the State Defendants acknowledge that there is at least a plausible argument that the arrest occurred when Harried was handcuffed, and that any excessive force after that point could therefore be deemed to violate the Fourteenth Amendment and Article 24. *See* Mot. Dismiss at 11 ("Nowhere, however, does Mr. Harried allege

14

that Deputy Cormier used force on him after he was handcuffed. He therefore fails to state of claim of post-arrest excessive force against Deputy Cormier and the State in violation of his due process rights under Article 24."). Contrary to the State Defendants' claim, the Amended Complaint includes allegations that Deputy Cormier engaged in physical contact with Harried after he was handcuffed. For example, it alleges that Corporal Harris and Deputy Cormier "restrained [Harried] in handcuffs before yanking, pushing, pulling, and removing support from Mr. Harried causing him to fall and smash his head on the pavement numerous times" and "intentionally, and repeatedly, slammed Mr. Harried's head and neck into the ground when moving his unconscious body." Am. Compl. ¶¶ 42–43. It further alleges that:

> Cpl. Harris and Deputy Sheriff Cormier used unreasonable, unnecessary, and excessive force in the treatment of Mr. Harried when they forcibly restrained him, pulled him to the ground, tased him repeatedly, and then yanked, pushed, pulled, and otherwise caused Mr. Harried to fall, handcuffed and helpless, onto the ground numerous times, hitting his head against the pavement each time.

*Id.* ¶ 61. Where the Amended Complaint includes allegations that Deputy Cormier engaged in forcible actions against Harried after he was handcuffed, and where those allegations may plausibly identify post-arrest excessive force, the Court finds that Harried has stated a viable Article 24 claim against Deputy Cormier.

### V. Intentional Infliction of Emotional Distress

In the Motion, the State Defendants also argue that Harried fails to state a claim for IIED. Under Maryland law, the tort of IIED has four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977). Defendants challenge only the sufficiency of the allegations on the fourth element, which "requires the plaintiff to show that he

suffered a severely disabling emotional response to the defendant's conduct." *Id.* at 616. In *Harris*, the court recognized that "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." *Id.* (quoting Restatement (Second) of Torts § 46 cmt. j (Am. L. Inst. 1965)); *see also Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *12 (D. Md. Mar. 7, 2016) (concluding that, while certain of the plaintiff's alleged "repercussions" "might be insufficient on their own to constitute severe emotional distress, they cross that threshold when considered in light of the outrageous conduct that [the plaintiff] pleads"). Nevertheless, the severe emotional distress which must be established includes "severe mental disturbances" and "emotional distress of such substantial quantity or enduring quality that no reasonable [person] in a civilized society should be expected to endure it." *Harris*, 380 A.2d at 617 (internal citations omitted). Typically, a plaintiff must allege "evidentiary particulars" that would support the conclusion that the plaintiff suffered severe emotional distress. *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 115 (2000) (quoting *Harris*, 380 A.2d at 617).

Here, Harried has alleged specific facts about the severe physical injuries he sustained as a result of this incident, including that he "remained in a coma for over two weeks," "his motor skills were effectively gone and he required constant care as he was unable to perform even the most basic acts," and he had to undergo physical therapy for a month "so he could re-learn to perform everyday acts and functions such as eating, walking, and going to the bathroom." Am. Compl. ¶¶ 31–33. His allegations about emotional distress, however, consist primarily of the broad assertion that he "experienced and continues to experience severely disabling emotional distress, mental anguish, and humiliation that significantly interferes with his ability to perform routine functions, enjoy his daily life, and has otherwise impeded his ability to function in society." *Id.*

¶¶ 116, 150. The only specific fact alleged about his emotional distress is the assertion that he suffered humiliation when Corporal Harris's actions left his pants pulled down in public. He does not allege concrete facts demonstrating "with reasonable certainty the nature, intensity or duration of the alleged emotional injury," such as facts about whether he sought psychological treatment, "how long the treatment lasted, whether it was successful or is still continuing, whether it was periodic or intensive, and so forth." *Manikhi*, 758 A.2d at 115 (concluding that the plaintiff, who had alleged severe physical and verbal sexual harassment, did not sufficiently allege severe emotional distress where the facts alleged about her emotional distress were that she sought medical treatment, was fearful at work, had to change job sites, and had to be on alert constantly). Where Harried has provided very few facts illustrating the severity of his emotional distress and nowhere alleges that he required treatment for any emotional injury, the Court concludes that Harried has not pleaded the "'evidentiary particulars'" necessary to state a claim for IIED. *Id.* (quoting *Harris*, 380 A.2d at 617). The Motion will be granted as to Count 6, and the IIED claim will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the State Defendants' Partial Motion to Dismiss will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Count 6, which will be dismissed without prejudice, and as to the claim in Count 7 against the State of Maryland, which will be dismissed with prejudice. The Motion will be otherwise denied. A separate Order shall issue.

Date:  November 18, 2024



THEODORE D. CHUANG
United States District Judge